IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LINDA JACKSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No.: 10 C 5837 |
| v. ) | |
| ) | |
| FEDERAL EXPRESS CORPORATION, a ) | Suzanne B. Conlon, Judge |
| Delaware Corporation. ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Linda Jackson sues her former employer, Federal Express Corporation ("FedEx"), under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* (Count I), and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.* (Count II). Jackson claims FedEx constructively terminated her on account of her disability (episodic cluster headaches) and her age (59). FedEx moves for summary judgment. For the reasons set forth below, the motion is granted.

## BACKGROUND

The following facts are derived from the parties' Local Rule 56.1 statements and exhibits. Jackson, 59 years old, worked as a full-time courier at the GYYA FedEx station in downtown Chicago. Def. Facts ¶ 1. She was employed by FedEx as a courier for over 25 years. Pl. Facts ¶ 1. During most of her career, she delivered packages on a route in Chicago's Gold Coast neighborhood, on North Michigan Avenue. *Id.* ¶ 6.

Since the age of 12, Jackson has suffered from episodic cluster headaches. Pl. Facts ¶ 2. This condition can affect sufferers intermittently and may last for a period of days. *Id.* ¶ 3.

During a cluster headache "cycle," Jackson was unable to perform her job. *Id.* ¶ 4. FedEx allowed her to take time off when she was affected by these headaches – initially as paid medical leave, but eventually as unpaid leaves of absence. *Id.* ¶ 5.

Prior to her headache-related leave of absence in the summer of 2009, the shipment volume on the Gold Coast route decreased substantially, from 200 packages to 130 to 140 packages per day. Def. Facts ¶¶ 7-8. While she was on leave, various couriers and swing drivers covered some of the stops on the Gold Coast route, while other stops were transferred to different routes to meet the business needs of the station. *Id.* ¶ 11. Senior managers who supervised the Gold Coast route eventually decided to eliminate the Gold Coast route altogether. *Id.* ¶ 13.

On September 10, 2009, Jackson returned to work and was told by the operations manager that her route had been deleted. Pl. Facts ¶¶ 8-9, 11. He informed Jackson that she had been reassigned to a route in Chicago's Hyde Park/Washington Park area ("Hyde Park route"). *Id.* ¶ 14. This was the only route available at the time.[1] Def. Facts ¶ 15. Jackson told the operations manager she wanted to return to the Gold Coast route, but it no longer existed. Def. Facts ¶ 17. Daryl Grandberry, a swing driver, trained Jackson on the Hyde Park route for three days, providing her with information concerning the area and stop locations. *Id.* ¶ 18. On the Hyde Park route, Jackson had the same job and responsibilities. *Id.* ¶ 21. Although she had the same hourly pay rate, she earned more money because she worked some overtime. *Id.* ¶ 22. However, she found the new route to be overwhelming and dangerous. Linda Jackson Dep. Tr. at 131. On September 22, 2009, Jackson presented FedEx with a short note stating that she

---

[1] Jackson does not properly dispute that this was the only available route by citing evidence to the contrary. Her challenges to this fact fail to comply with Northern District of Illinois Local Rule 56.1(b)(3).

2

would retire on September 25, 2009. Def. Facts ¶ 27.

## DISCUSSION

I.  **Summary Judgment Standard**

Summary judgment is appropriate if the record evidence reveals no genuine issue of material fact and FedEx is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 683 (7th Cir. 2010). FedEx bears the initial burden of showing that it is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If satisfied, this burden shifts to Jackson to go beyond the pleadings and present specific facts that show there is a genuine issue for trial. FED. R. CIV. P. 56(e)(2); *Kramer v. Vill. of N. Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004). There is a genuine issue of material fact if the evidence is sufficient to support a reasonable jury verdict in Jackson's favor. *Pugh v. City of Attica, Indiana*, 259 F.3d 619, 625 (7th Cir. 2001). In considering FedEx's motion, all facts and reasonable inferences are viewed in the light most favorable to Jackson. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

II. **The Underlying Constructive Discharge Claim**

To establish a *prima facie* case of discrimination under the ADA or ADEA, Jackson must show she suffered an adverse employment action on account of her protected characteristic. *Timmons v. Gen. Motors Corp.*, 469 F.3d 1122, 1126-28 (7th Cir. 2006); *Van Antwerp v. City of Peoria, Ill.*, 627 F.3d 295, 297 (7th Cir. 2010). Adverse employment actions come in three general forms: (1) termination or reduction in benefits or financial terms of employment; (2) transfers or changes in job duties that diminish an employee's skills, thereby reducing future job

3

prospects; and (3) unbearable changes in job conditions, such as a hostile work environment or conditions amounting to a constructive discharge. *Barton v. Zimmer, Inc.*, No. 10 C 2212, 2011 WL 4921603, at *4 (7th Cir. Oct. 18, 2011). Jackson does not allege either of the first two forms of adverse employment action. Instead she bases her claims on a "constructive terminat[ion]" theory tied to her transfer to the Hyde Park route. Compl. ¶¶ 2, 40-41, 52.

To establish a claim of constructive discharge, a plaintiff must show her working conditions were so unbearable that she was forced to resign. *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010). A constructive discharge theory requires a level of intolerableness that exceeds that of a hostile work environment because under the latter, an employee is generally expected to remain employed while seeking redress. *Id.* Whether a work environment meets the constructive discharge standard is determined from the viewpoint of a reasonable employee. *Roby v. CWI, Inc.*, 579 F.3d 779, 785 (7th Cir. 2009).

FedEx argues Jackson has not proffered facts that would allow a reasonable juror to determine that her working conditions were objectively intolerable. Although Jackson notes that the Hyde Park route was more physically strenuous and occasionally required longer hours, her constructive discharge claim focuses on the route's dangerousness. Jackson testified regarding two specific incidents that occurred on the Hyde Park route. In the first, a man yelled at Jackson from the street and followed her to the truck while she was on her route. Linda Jackson Dep. Tr. at 163. When she asked the man what he wanted, he said, "You." *Id.* Jackson told the man she was busy working and did not have time for him; he walked away. *Id.* Jackson also testified that on another occasion on the Hyde Park route, people screamed at her from the street. *Id.* Jackson informed her new operations manager, Jose Perez, that the Hyde Park route was in a horrible

4

neighborhood that she found stressful; Perez said he could not take her off the new route. *Id.* at 130-131. Jackson also told her old operations manager that people on the new route were screaming at her and that it seemed dangerous. *Id.* at 151.

Jackson spent most of her FedEx career on the Gold Coast route. She was abruptly transferred to a less desirable route. But the incidents Jackson relies on do not suggest that the route change created an intolerable situation that would make a reasonable employee resign. Jackson was able to complete all of her job duties on the Hyde Park route and did not terminate a single delivery due to a safety concern. Def. Facts ¶¶ 39-40. She was never the victim of a crime and never suffered any injuries or interference with her work. *Id.* ¶¶ 30-31. While on the route, she never reported any incident to the police, noted any safety issues on her timecard, or called a manager or FedEx dispatcher to report a safety issue. *Id.* ¶¶ 32-34. There is no evidence that past drivers on the Hyde Park route had problems with this particular route, much less were forced to resign. Jackson notes that the Washington Park neighborhood was identified in a 2009 *Chicago Sun-Times* article as the second most dangerous neighborhood in the United States. Pl. Facts. ¶ 32. A newspaper offered to prove the truth of the matter asserted–that the neighborhood is dangerous–is inadmissible hearsay and cannot be relied upon in a summary judgment proceeding. *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 533 (7th Cir. 2003); *Firefighters Local 2 v. City of Chicago*, 249 F.3d 649, 654 (7th Cir. 2001).

By retiring almost immediately after her transfer, Jackson gave FedEx little opportunity to verify or remedy her complaints. Prior to her retirement, Jackson did not request a "check-ride" by a manager to accompany her and observe the conditions of the Hyde Park route or otherwise engage in available avenues for handling workplace problems. Def. Facts ¶¶ 36, 45. Jackson

5

was aware of the company's Open Door Policy, Guaranteed Fair Treatment Procedure, and internal EEO complaint procedure, but did not use them. *Id.* ¶¶ 44-45.

Additionally, the record does not suggest that age and disability discrimination contributed to creating an intolerable working environment. Jackson does not present any evidence of comments or actions related to her episodic cluster headaches.[2] There is also no record evidence to support a reasonable inference of age discrimination. Jackson's niece testified that Regis Frazier, Jackson's former manager, said Jackson "could get a job working at Walmart" and asked Jackson's niece how long her aunt was going to continue working. Markita Jackson Dep. Tr. at 26-28. Additionally, Jackson testified that her senior manager, Mr. Girtman, told her, "I am up there with you," and, when he saw Jackson pushing packages on a conveyor belt, said, "I don't think you can do that. I think that's a little hard for you." Linda Jackson Dep. Tr. at 178-179. This testimony is not hearsay, as it is presented to show the biases of Frazier and Girtman rather than the truth of the matter asserted. *Hunter v. Allis-Chambers Corp., Engine Div.*, 797 F.2d 1417 (7th Cir. 1986) (testimony that supervisor used a racial slur not hearsay when used to show the supervisor's racial attitudes). Nonetheless, viewed in the light most favorable to Jackson, these stray comments would not allow a reasonable jury to find a hostile work environment. ~~much less a constructive discharge, particularly because they occurred prior to Jackson's transfer to the Hyde Park route.~~ [sbc]

When Jackson returned from her leave, she was given the only available route and was not offered the choice of another route. Def. Facts ¶ 15. Jackson understood that FedEx's policy allows a more experienced courier to take over the route of a less experienced courier, upon the

---

[2] Because the court finds there is no adverse employment action, it is unnecessary to consider whether Jackson's affliction constitutes a disability under the ADA.

6

deletion of the more experienced courier's route. Linda Jackson Dep. Tr. at 103-104. In support, Jackson relies on FedEx's *People's Best Practices Book*. The text in the *People's Best Practices Book* is ambiguous as to the suggested course of action in Jackson's particular situation. *People's Best Practices Book*, Pl. Ex. G at LDJ1750-LDJ1751. FedEx Human Resources manager Michael Rodriguez testified that these guidelines address the general course of conduct when a route is deleted or changed. Michael Rodriguez Dep. Tr. at 64-65. However, Rodriguez was not aware of any policy or guideline at FedEx that provides a courier should be given a choice of routes when her regular route is eliminated. *Id.* at 72. Jackson does not present evidence of a single instance in which the *People's Best Practices Book* was applied in conformity with her understanding. In fact, Jackson does not contest that her FedEx branch eliminated the routes driven by three other couriers and reassigned these employees without giving them any choice of routes. Def. Facts ¶ 57. There is also no evidence that the *People's Best Practices Book* was a part of Jackson's employment agreement, or was in any other way binding. The record would not support a reasonable inference that these guidelines were generally applied in conformity with Jackson's understanding.

Finally, FedEx contends that recognizing a constructive discharge claim based on neighborhood safety would contravene public policy. In *Truzzi v. Shell Oil Co.*, No. 87-1688, 1988 U.S. App. LEXIS 12362 (6th Cir. Sept. 14, 1988), the Sixth Circuit found that holding a Shell sales representative's transfer to a dangerous urban area to be a constructive discharge would threaten the provision of services to certain locations. At *7-8; *see also Anzaldua v. Chicago Transit Authority*, 02 C 2902, 2002 U.S. Dist. LEXIS 22241, *8-9 (N.D. Ill. Nov. 15, 2002) (Kocoras, J.) (dismissing constructive discharge claim based on Chicago Transit Authority

employee's transfer to the city's southwest side). Jackson does not present any decision in which a court allowed a constructive discharge claim based on neighborhood safety. .

Viewing the evidence and drawing all reasonable inferences in Jackson's favor, she has failed to provide evidence sufficient for a reasonable jury to find she was constructively discharged. Because Jackson did not suffer an adverse employment action, she is unable to establish a *prima facie* case of disability or age discrimination. The court need not further consider her claims under the ADA and the ADEA.

## CONCLUSION

FedEx's summary judgment motion is granted. FedEx is entitled to judgment on Count I for disability discrimination and Count II for age discrimination because Jackson fails to present evidence that she suffered an adverse employment action when her delivery route was changed.

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge

January 20, 2012